IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| PURDUE PHARMA L.P., and<br>PURDUE PHARMACEUTICALS L.P.,<br><br>Plaintiffs,<br>v.<br><br>ACCORD HEALTHCARE INC. and<br>ACCORD HEALTHCARE INC. USA,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 5:24-cv-284 |

## COMPLAINT

Plaintiffs Purdue Pharma L.P. and Purdue Pharmaceuticals L.P. (collectively, "Purdue" or "Plaintiffs"), for their Complaint against Defendants Accord Healthcare Inc. and Accord Healthcare Inc. USA (collectively, "Accord" or "Defendants"), allege as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, for infringement of United States Patent Nos. 11,826,472 ("the '472 patent"), 11,904,055 ("the '055 patent"), 11,938,225 ("the '225 patent"), and 11,964,056 ("the '056 patent") (collectively, "the patents-in-suit"), attached as Exhibits A-D.

2. This action relates to Abbreviated New Drug Application ("ANDA") No. 213564 submitted upon information and belief in the name of Defendants to the United States Food and Drug Administration ("FDA").

3. Plaintiffs seek judgment that Defendants have infringed the patents-in-suit. Defendants have infringed the patents-in-suit at least under 35 U.S.C. § 271(e)(2)(A) by filing ANDA No. 213564, submitted upon information and belief in the name of Defendants to the FDA.

4. Purdue's OxyContin® is the subject of approved New Drug Application ("NDA") No. 022272.

5. Defendants' ANDA seeks approval to market a generic version of OxyContin® in the 10 mg, 15 mg, 20 mg, 30 mg, 40 mg, 60 mg and 80 mg dosage strengths ("Defendants' ANDA Products") prior to expiration of the patents-in-suit.

6. On October 8, 2020, Plaintiffs filed a related Complaint against Defendants, C.A. No. 20-01362-RGA (D. Del.) ("*Purdue v. Accord I*"), for infringement of United States Patent Nos. 9,763,933 ("the Mannion '933 patent"); 9,775,808 ("the '808 patent"); 9,763,886 ("the '886 patent"); 9,073,933 ("the '933 patent"); 9,522,919 ("the '919 patent"); and 10,407,434 ("the '434 patent).

7. *Purdue v. Accord I* was filed in connection with Defendants' ANDA, which contained a "Paragraph IV" certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) alleging that the Mannion '933, '808, '933, '919 and '434 patents, listed in the FDA's Orange Book as covering OxyContin®, which is the subject of approved NDA No. 022272, are "invalid, unenforceable, and/or will not be infringed" by the commercial manufacture, use or sale of the drug products described in Defendants' ANDA. The '886 patent is not an Orange Book-listed patent.

8. On April 11, 2023, Judge Richard G. Andrews found claim 3 of the Mannion '933 patent, claim 3 of the '808 patent, claim 6 of the '886 patent, claims 3 and

- 2 -

11 of the '933 patent, and claim 21 of the '919 patent invalid for obviousness under 35 U.S.C. § 103.

9. Purdue appealed Judge Andrews' decision in *Purdue v. Accord I* to the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit"). *See Purdue Pharma L.P. v. Accord Healthcare, Inc.*, No. 23-1953 (Fed. Cir.). The parties have briefed the merits. Oral argument (and the Federal Circuit's decision) is pending.

10. On July 8, 2022, Plaintiffs filed a related Complaint against Defendants, C.A. No. 22-00913-WCB (D. Del.) ("*Purdue v. Accord II*"), for infringement of United States Patent Nos. 11,304,908 ("the '908 patent") and 11,304,909 ("the '909 patent").

11. *Purdue v. Accord II* was filed in connection with Defendants' ANDA, which contained a "Paragraph IV" certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) alleging that the '908 and '909 patents, listed in the FDA's Orange Book as covering OxyContin®, which is the subject of approved NDA No. 022272, are "invalid, unenforceable, and/or will not be infringed" by the commercial manufacture, use or sale of the drug products described in Defendants' ANDA.

12. *Purdue v. Accord II* was originally assigned to Judge Andrews. On December 31, 2023, Judge Andrews took senior status and the case was reassigned to Judge William C. Bryson of the United States Court of Appeals for the Federal Circuit, who was sitting by designation. Judge Bryson held a two-day bench trial in February 2024. Post-trial briefing has been completed. Closing argument (and Judge Bryson's decision) is pending.

## THE PARTIES

13. Plaintiff Purdue Pharma L.P. ("Purdue Pharma") is a limited partnership organized and existing under the laws of the State of Delaware, having a place of business

- 3 -

at One Stamford Forum, 201 Tresser Boulevard, Stamford, Connecticut 06901. Purdue Pharma is also the holder of approved NDA No. 022272 for OxyContin®, indicated for pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate. Purdue Pharma sells OxyContin® in the United States.

14. Plaintiff Purdue Pharmaceuticals L.P. ("Purdue Pharmaceuticals") is a limited partnership organized and existing under the laws of the State of Delaware, having a place of business at 4701 International Boulevard W., Wilson, North Carolina 27893.

15. Plaintiffs own the patents-in-suit, identified in paragraphs 37-40 below and attached hereto as Exhibits A-D.

16. On information and belief, Defendant Accord Healthcare Inc. ("Accord Healthcare") is a company organized and existing under the laws of the State of North Carolina, having a principal place of business at 8041 Arco Corporate Drive, Suite 200, Raleigh, North Carolina 27617.

17. On information and belief, Defendant Accord Healthcare Inc., USA ("Accord USA") is a corporation organized and existing under the laws of the State of North Carolina, having a place of business at 8041 Arco Corporate Drive, Suite 200, Raleigh, NC 27617.

18. On information and belief, Defendants are both wholly owned subsidiaries of Intas Pharmaceuticals Limited.

19. On information and belief, Defendants develop, manufacture, distribute and/or market pharmaceutical products throughout the United States, including in this judicial district, through their own actions and through the actions of their agents.

20. On information and belief, Accord USA acts as an agent for Accord Healthcare.

21. On further information and belief, Defendants are working in concert with respect to the development, regulatory approval, marketing, sale and distribution of pharmaceutical products, including the Defendants' ANDA Products described in ANDA No. 213564.

22. On information and belief, Defendants closely coordinate their commercial activities and simultaneously share senior corporate officers.

23. On information and belief, Defendant Accord USA will distribute Defendants' ANDA Products when approved.

24. On information and belief, Defendants were jointly involved in the preparation and submission of Defendants' ANDA.

25. On further information and belief, if Defendants' ANDA is approved, Defendants will be jointly involved in the manufacturing, marketing, distributing and/or sale of Defendants' ANDA Products.

**SUBJECT MATTER JURISDICTION AND VENUE**

26. This action arises under the patent laws of the United States, including 35 U.S.C. § 271 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

27. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

28. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)-(d) and 1400(b).

29. Venue is proper as to Defendants because they are incorporated in the State of North Carolina.

30. Venue is proper as to Defendants, because, on information and belief, Defendants have filed amendments to Defendants' ANDA from their place of business at 8041 Arco Corporate Drive, Suite 200, Raleigh, NC 27617. Thus, Defendants have committed an act of infringement in, and also have a primary place of business in, the Eastern District of North Carolina.

## PERSONAL JURISDICTION

31. Personal jurisdiction is proper as to Defendants because they are incorporated in the State of North Carolina.

32. This Court also has personal jurisdiction over Defendants by virtue of, *inter alia,* their systematic and continuous contacts with North Carolina and contacts with North Carolina in connection with the submission of Defendants' ANDA, as set forth below.

33. On information and belief, Defendants are in the business of preparing generic pharmaceuticals that they distribute in the State of North Carolina and throughout the United States.

34. On information and belief, if ANDA No. 213564 is approved, then Defendants' ANDA Products would, among other things, be marketed and distributed in North Carolina, and/or prescribed by physicians practicing and dispensed by pharmacies located within North Carolina, all of which would have a substantial effect on the State of North Carolina.

35. This Court further has personal jurisdiction over Defendants because they have purposely availed themselves of the benefits of North Carolina's laws such that they should reasonably anticipate being haled into court here.

36. It is not fundamentally unfair or unreasonable for Defendants to litigate this action in this District.

- 6 -

37.     Purdue is the lawful owner of all right, title and interest in the '472 patent, titled "TAMPER RESISTANT DOSAGE FORMS," including the right to sue and to recover for past infringement thereof. A copy of the '472 patent is attached hereto as Exhibit A, which was duly and legally issued on November 28, 2023, naming William H. McKenna, Richard O. Mannion, Edward P. O'Donnell, and Haiyong H. Huang as the inventors.

38.     Purdue is the lawful owner of all right, title and interest in the '055 patent, titled "TAMPER RESISTANT DOSAGE FORMS," including the right to sue and to recover for past infringement thereof. A copy of the '055 patent is attached hereto as Exhibit B, which was duly and legally issued on February 20, 2024, naming William H. McKenna, Richard O. Mannion, Edward P. O'Donnell, and Haiyong H. Huang as the inventors.

39.     Purdue is the lawful owner of all right, title and interest in the '225 patent, titled "TAMPER RESISTANT DOSAGE FORMS," including the right to sue and to recover for past infringement thereof. A copy of the '225 patent is attached hereto as Exhibit C, which was duly and legally issued on March 26, 2024, naming William H. McKenna, Richard O. Mannion, Edward P. O'Donnell, and Haiyong H. Huang as the inventors.

40.     Purdue is the lawful owner of all right, title and interest in the '056 patent, titled "TAMPER RESISTANT DOSAGE FORMS," including the right to sue and to recover for past infringement thereof. A copy of the '056 patent is attached hereto as Exhibit D, which was duly and legally issued on April 23, 2024, naming William H. McKenna, Richard O. Mannion, Edward P. O'Donnell, and Haiyong H. Huang as the

inventors.

## DEFENDANTS' ANDA

41. On information and belief, on or before August 25, 2020, Defendants filed Defendants' ANDA in the name of Defendants with the FDA, under § 505(j) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 355(j)), seeking approval to engage in the commercial manufacture, use, sale, offer for sale, or importation of Defendants' ANDA Products generic products based on the Reference Listed Drug OxyContin®, which is the subject of approved NDA No. 022272.

42. In a letter dated August 25, 2020, addressed to Plaintiffs and received by Purdue Pharma on or about August 26, 2020, Defendants provided what purports to be a "Notice of Paragraph IV Certification" with respect to Defendants' ANDA and Defendants' ANDA Products, under § 505(j)(2)(B)(iv) of the Federal Food, Drug, and Cosmetic Act.

43. In a second letter dated May 26, 2022, addressed to Plaintiffs and received by Purdue Pharma on or about May 27, 2022, Defendants provided what purports to be a "Notice of Paragraph IV Certification" with respect to Defendants' ANDA and Defendants' ANDA Products, under § 505(j)(2)(B)(iv) of the Federal Food, Drug, and Cosmetic Act.

44. Defendants' submission of Defendants' ANDA is an act of infringement of the patents-in-suit under the United States Patent Law, 35 U.S.C. § 271(e)(2)(A).

45. Defendants' amendments to Defendants' ANDA are also acts that infringe the patents-in-suit.

46. Following USPTO issuance of the patents-in-suit, Plaintiffs commenced this action without unreasonable delay.

# FIRST CLAIM FOR RELIEF
## (PATENT INFRINGEMENT OF U.S. PATENT NO. 11,826,472)

47.     Purdue incorporates by reference and reallege paragraphs 1 through 46 above as though fully restated herein.

48.     Pursuant to 35 U.S.C. § 271(e)(2), Defendants' submission of ANDA No. 213564 to the FDA seeking approval of Defendants' ANDA Products, including any amendments thereto was an act of infringement of the '472 patent by Defendants.

49.     On information and belief, Defendants' ANDA Products, or the use or manufacture thereof, are covered by independent claim 1 of the '472 patent and certain claims dependent therefrom.  Independent claim 1 recites:

A solid oral extended release dosage form, comprising:

an extended release matrix comprising an active agent and polyethylene oxide (PEO) having an approximate molecular weight of 2 million Da to 8 million Da based on rheological measurements, wherein the PEO comprises at least about 30% (by weight) of the total weight of the dosage form,

wherein the dosage form provides a dissolution rate, which when measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF) at 37° C., is between 12.5 and 55% (by wt) active agent released after 1 hour, between 25 and 65% (by wt) active agent released after 2 hours, between 45 and 85% (by wt) active agent released after 4 hours and between 55 and 95% (by wt) active agent released after 6 hours,

wherein the dosage form provides an in-vitro dissolution rate, when measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF) comprising 40% ethanol at 37° C., characterized by the percent amount of active released at 0.5 hours, that deviates no more than about 20% points 0.5 hours from the corresponding in-vitro dissolution rate measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF) at 37° C. without ethanol,

wherein the dosage form is cured at a curing temperature ranging from about 68° C. to about 85° C.,

wherein the curing time is from about 30 minutes to about 4 hours, wherein the dosage form is a tablet,

wherein the dosage form when subjected to a maximum force of about 196 N or about 439 N in a tablet hardness test, does not break,

wherein the tablet when subjected to an indentation test resists a work of at least about 0.06 J without cracking,

wherein the active agent is an opioid analgesic,

wherein the opioid analgesic is oxycodone hydrochloride,

wherein the dosage form provides a mean $t_{max}$ of oxycodone at about 2 to about 6 hours,

wherein the dosage form comprises from about 10 mg to about 160 mg oxycodone hydrochloride and wherein the dosage form provides a mean maximum plasma concentration ($C_{max}$) of oxycodone from about 6 ng/mL to about 240 ng/mL,

wherein the oxycodone hydrochloride has a 14-hydroxycodeinone level of less than about 25 ppm,

wherein the extended release matrix further comprises a PEO having an approximate molecular weight of 100, 000 Da to 900,000 Da based on rheological measurements.

50. If approved by the FDA, Defendants' commercial manufacture, use, sale, and/or offer for sale of Defendants' ANDA Products will infringe, induce infringement of, and/or contribute to the infringement of one or more claims of the '472 patent under 35 U.S.C. § 271(a)-(c). Since at least the issue date of the '472 patent, Defendants have acted with knowledge, or at least with willful blindness of the fact, that the induced acts would constitute infringement of the '472 patent.

51. Defendants' ANDA Products constitute a material part of the inventions covered by the claims of the '472 patent.

52. Upon information and belief, Defendants know that Defendants' ANDA Products are especially made or especially adapted for use in the infringement of one or more claims of the '472 patent.

53. Upon information and belief, Defendants have had and continue to have knowledge that there is no substantial non-infringing use for Defendants' ANDA Products.

- 10 -

54. Defendants have been aware of the existence of the '472 patent and have no reasonable basis for believing that Defendants' ANDA Products will not infringe the '472 patent, thus rendering the case "exceptional," as that term is used in 35 U.S.C. § 285.

55. Unless Defendants are enjoined by the Court, Purdue will be substantially and irreparably harmed by Defendants' infringement of the '472 patent. Purdue has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**
**(PATENT INFRINGEMENT OF U.S. PATENT NO. 11,904,055)**

56. Purdue incorporates by reference and reallege paragraphs 1 through 46 above as though fully restated herein.

57. Pursuant to 35 U.S.C. § 271(e)(2), Defendants' submission of ANDA No. 213564 to the FDA seeking approval of Defendants' ANDA Products, including any amendments thereto, was an act of infringement of the '055 patent by Defendants.

58. On information and belief, the process for making Defendants' ANDA Products, is covered by the independent claim of the '055 patent and certain dependent claims therefrom. Independent claim 1 recites:

A process of preparing a solid oral extended release pharmaceutical dosage form, comprising:

combining: (1) polyethylene oxide, and (2) oxycodone hydrochloride, to form a composition;

shaping the composition to form an extended release matrix formulation; and

curing said extended release matrix formulation at a temperature ranging from about 68° C. to about 85° C. for about 30 minutes to about 4 hours, to form the dosage form,

wherein the extended release matrix comprises:

from about 10 mg to about 160 mg oxycodone hydro- chloride;

a polyethylene oxide (PEO) having an approximate molecular weight of 2 million Da to 8 million Da based on rheological measurements; and

- 11 -

a PEO having an approximate molecular weight of 100,000 Da to 900,000 Da based on rheological measurements,

wherein the PEO comprises at least about 30% (by weight) of the total weight of the dosage form,

wherein the dosage form provides a dissolution rate, which when measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF) at 37° C., is between 12.5 and 55% (by wt) active agent released after 1 hour, between 25 and 65% (by wt) active agent released after 2 hours, between 45 and 85% (by wt) active agent released after 4 hours and between 55 and 95% (by wt) active agent released after 6 hours,

wherein the dosage form provides an in-vitro dissolution rate, when measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF)comprising 40% ethanol at 37° C., characterized by the percent amount of active released at 0.5 hours, that deviates no more than about 20% points 0.5 hours from the corresponding in-vitro dissolution rate measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF) at 37° C. without ethanol,

wherein the dosage form is a tablet,

wherein the dosage form when subjected to a maximum force of about 196 N or about 439 N in a tablet hardness test, does not break,

wherein the tablet when subjected to an indentation test resists a work of at least about 0.06J without cracking,

wherein the dosage form provides a mean $t_{max}$ of oxycodone at about 2 to about 6 hours,

wherein the administration of the dosage form provides a mean maximum plasma concentration ($C_{max}$) of oxycodone from about 6 ng/mL to about 240 ng/mL, and

wherein the oxycodone hydrochloride has a 14-hydroxy-codeinone level of less than about 25 ppm.

59. If approved by the FDA, Defendants' importation, offer for sale, sale, and/or use of Defendants' ANDA Products will infringe, induce infringement of, and/or contribute to the infringement of one or more claims of the '055 patent under 35 U.S.C. § 271(a)-(c), and/or (g). Since at least the issue date of the '055 patent, Defendants have acted with knowledge, or at least with willful blindness of the fact, that the induced acts would constitute infringement of the '055 patent.

60. Defendants, through at least their labeling and manufacturing process, will intentionally induce infringement of the '055 patent by at least patients who will take Defendants' NDA Products, caregivers/healthcare providers who administer the products, and any manufacturers other than Defendants who manufacture Defendants' NDA Products.

61. Defendants' ANDA Products constitute a material part of the inventions covered by the claims of the '055 patent.

62. Upon information and belief, Defendants know that Defendants' ANDA Products are especially made or especially adapted for use in the infringement of one or more claims of the '472 patent.

63. Upon information and belief, Defendants have had and continue to have knowledge that there is no substantial non-infringing use for Defendants' ANDA Products.

64. Upon information and belief, Defendants have been aware of the existence of the '055 patent and have no reasonable basis for believing that Defendants' ANDA Products will not infringe the '055 patent, thus rendering the case "exceptional," as that term is used in 35 U.S.C. § 285.

65. Unless Defendants are enjoined by the Court, Purdue will be substantially and irreparably harmed by Defendants' infringement of the '055 patent. Purdue has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF
### (PATENT INFRINGEMENT OF U.S. PATENT NO. 11,938,225)

66. Purdue incorporates by reference and reallege paragraphs 1 through 46 above as though fully restated herein.

- 13 -

67. Pursuant to 35 U.S.C. § 271(e)(2), Defendants' submission of ANDA No. 213564 to the FDA seeking approval of Defendants' ANDA Products, including any amendments thereto, was an act of infringement of the '225 patent by Defendants.

68. On information and belief, Defendants' ANDA Products, or the use thereof, are covered by the independent claim of the '225 patent and certain dependent claims therefrom. Independent claim 1 recites:

> A method of treating pain comprising orally administering to a patient in need thereof a solid oral extended release dosage form comprising:
>
> an extended release matrix comprising from about 10 mg to about 160 mg oxycodone hydrochloride;
>
> a polyethylene oxide (PEO) having an approximate molecular weight of 2 million Da to 8 million Da based on rheological measurements; and
>
> a PEO having an approximate molecular weight of 100,000 Da to 900,000 Da based on rheological measurements,
>
> wherein the PEO comprises at least about 30% (by weight) of the total weight of the dosage form,
>
> wherein the dosage form provides a dissolution rate, which when measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF) at 37° C, is between 12.5 and 55% (by wt) active agent released after 1 hour, between 25 and 65% (by wt) active agent released after 2 hours, between 45 and 85% (by wt) active agent released after 4 hours and between 55 and 95% (by wt) active agent released after 6 hours,
>
> wherein the dosage form provides an in-vitro dissolution rate, when measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF) comprising 40% ethanol at 37° C, characterized by the percent amount of active released at 0.5 hours, that deviates no more than about 20% points 0.5 hours from the corresponding in-vitro dissolution rate measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF) at 37° C without ethanol,
>
> wherein the dosage form is cured at a curing temperature ranging from about 68° C to about 85° C,
>
> wherein the curing time is from about 30 minutes to about 4 hours,
>
> wherein the dosage form is a tablet,

- 14 -

wherein the dosage form when subjected to a maximum force of about 196 N or about 439 N in a tablet hardness test, does not break,

wherein the tablet when subjected to an indentation test resists a work of at least about 0.06 J without cracking,

wherein the dosage form provides a mean $t_{max}$ of oxycodone at about 2 to about 6 hours,

wherein the administration of the dosage form provides a mean maximum plasma concentration ($C_{max}$) of oxycodone from about 6 ng/mL to about 240 ng/mL, and

wherein the oxycodone hydrochloride has a 14-hydroxycodeinone level of less than about 25 ppm.

69. The administration of Defendants' ANDA Products by any healthcare providers, including, but not limited to doctors, physicians, and nurse practitioners ("Healthcare Providers"), and patients, will directly infringe one or more claims of the '255 patent.

70. Defendants' proposed label for Defendants' ANDA Products will explicitly instruct Healthcare Providers and patients to use Defendants' ANDA Products in a manner that will directly infringe one or more claims of the '225 patent.

71. Defendants, through at least their labeling and manufacturing process, will intentionally induce infringement of the '225 patent by at least patients who will take Defendants' NDA Products, caregivers/healthcare providers who administer the products, and any manufacturers other than Defendants who manufacture Defendants' NDA Products.

72. If approved by the FDA, Defendants' importation, offer for sale, sale, and/or use of Defendants' ANDA Products will infringe, induce infringement of, and/or contribute to the infringement of one or more claims of the '225 patent under 35 U.S.C. § 271(a)-(c), and/or (g).

73. Since at least the issue date of the '225 patent, Defendants have acted with

- 15 -

knowledge, or at least with willful blindness of the fact, that the induced acts would constitute infringement of the '225 patent.

74.     Defendants' ANDA Products constitute a material part of the inventions covered by the claims of the '225 patent.

75.     Upon information and belief, Defendants know that Defendants' ANDA Products are especially made or especially adapted for use in the infringement of one or more claims of the '225 patent.

76.     Upon information and belief, Defendants have had and continue to have knowledge that there is no substantial non-infringing use for Defendants' ANDA Products.

77.     The administration of Defendants' ANDA Products by any Healthcare Providers and patients, for the treatment of pain, will directly infringe one or more claims of the '225 patent, including but not limited to independent claim 1 recited above.

78.     Defendants' proposed label for Defendants' ANDA Products will explicitly instruct Healthcare Providers and patients to use Defendants' ANDA Products in a manner that will directly infringe one or more claims of the '225 patent.

79.     If Defendants' ANDA Products are approved by the FDA, Defendants will actively induce others. including, e.g., Healthcare Providers and patients, to directly infringe one or more claims of the '225 patent.  Since at least the date of the Notice Letter, Defendants have acted with knowledge, or at least with willful blindness, that the induced acts would constitute infringement of the '225 patent.

80.     Defendants intend to cause direct infringement by others, *e.g.*, Healthcare Providers and patients.

81.     If Defendants' ANDA Products are approved by the FDA, Defendants will

- 16 -

take affirmative steps to induce infringement by, among other things, instructing Healthcare Providers and patients, through Defendants' proposed label, to use Defendants' ANDA Products in a manner that directly infringes one or more claims of the '225 patent. Thus, Defendants will aid, abet, urge, or encourage others, including, *e.g.*, Healthcare Providers and patients, to directly infringe one or more claims of the '225 patent, and Defendants will affirmatively and specifically intend to cause direct infringement.

82. Upon information and belief, Defendants have been aware of the existence of the '225 patent and have no reasonable basis for believing that Defendants' ANDA Products will not infringe the '225 patent, thus rendering the case "exceptional," as that term is used in 35 U.S.C. § 285.

83. Unless Defendants are enjoined by the Court, Purdue will be substantially and irreparably harmed by Defendants' infringement of the '225 patent. Purdue has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**
**(PATENT INFRINGEMENT OF U.S. PATENT NO. 11,964,056)**

84. Purdue incorporates by reference and reallege paragraphs 1 through 46 above as though fully restated herein.

85. Pursuant to 35 U.S.C. § 271(e)(2), Defendants' submission of ANDA No. 213564 to the FDA seeking approval of Defendants' ANDA Products, including amendments thereto, was an act of infringement of the '056 patent by Defendants.

86. On information and belief, Defendants' ANDA Products, or the use or manufacture thereof, are covered by independent claim 1 of the '056 patent and certain dependent claims therefrom. Independent claim 1 recites:

A solid oral extended release dosage form, comprising:

an extended release matrix comprising an active agent, magnesium stearate, butylated hydroxytoluene and polyethylene oxide (PEO) having an approximate molecular weight of 1 million Dato 15 million Da based on rheological measurements,

wherein the PEO comprises at least about 30% (by weight) of the total weight of the dosage form, a film coat overcoated on the extended release matrix,

wherein the dosage form provides a dissolution rate, which when measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF) at 37° C, is between 12.5 and 55% (by wt) active agent released after 1 hour, between 25 and 65% (by wt) active agent released after 2 hours, between 45 and 85% (by wt) active agent released after 4 hours and between 55 and 95% (by wt) active agent released after 6 hours, and

wherein the dosage form is expanded upon curing, as measured by a decrease in density of at least about 1.0% as determined by Archimedes Principle using a liquid of known density (po).

87.     On information and belief, Defendants' ANDA Products, or the use or manufacture thereof, are covered by independent claim 19 of the '056 patent.  Independent Claim 19 recites

A solid oral extended release dosage form comprising: (i) an extended release matrix comprising from about 10 mg to about 160 mg oxycodone hydrochloride, magnesium stearate, butylated hydroxytoluene and polyethylene oxide (PEO) having an approximate molecular weight of 1 million Dato 15 million Da based on rheological measurements,

wherein the PEO comprises at least about 30% (by weight) of the total weight of the dosage form and (ii) a film coat overcoated on the extended release matrix; wherein the dosage form provides a mean maximum plasma concentration ($C_{max}$) of oxycodone from about 6 ng/mL to about 240 ng/mL and

wherein the dosage form is expanded upon curing, as measured by a decrease in density of at least about 1.0% as determined by Archimedes Principle using a liquid of known density (po).

88.     On information and belief, Defendants' ANDA Products, or the use or manufacture thereof, are covered by independent claim 20 of the '056 patent.  Independent Claim 20 recites:

A solid oral extended release dosage form comprising: (i) an extended release matrix comprising oxycodone hydrochloride, magnesium stearate, butylated hydroxytoluene and polyethylene oxide (PEO) having an approximate molecular weight of 1 million Dato 15 million Da based on rheological measurements and (ii) a film coat overcoated on the extended release matrix;

wherein the dosage form provides an in-vitro dissolution rate, when measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF) comprising 40% ethanol at 37° C, characterized by the percent amount of oxycodone hydrochloride released at 0.5 hours, that deviates no more than about 20% points 0.5 hours from the corresponding in-vitro dissolution rate measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF) at 37° C without ethanol and

wherein the dosage form is expanded upon curing, as measured by a decrease in density of at least about 1.0% as determined by Archimedes Principle using a liquid of known density (po).

89.    If approved by the FDA, Defendants' commercial manufacture, use, importation, sale, and/or offer for sale of Defendants' ANDA Products will infringe, induce infringement of, and/or contribute to the infringement of one or more claims of the '056 patent under 35 U.S.C. § 271(a)-(c).  Since at least the issue date of the '056 patent, Defendants have acted with knowledge, or at least with willful blindness of the fact, that the induced acts would constitute infringement of the '056 patent.

90.    Upon information and belief, Defendants know that Defendants' ANDA Products are especially made or especially adapted for use in the infringement of one or more claims of the '056 patent.

91.    Upon information and belief, Defendants have had and continue to have knowledge that there is no substantial non-infringing use for Defendants' ANDA Products.

92.    Defendants' ANDA Products constitute a material part of the inventions covered by the claims of the '056 patent.

93.    Upon information and belief, Defendants have been aware of the existence

- 19 -

of the '056 patent and have no reasonable basis for believing that Defendants' ANDA Products will not infringe the '056 patent, thus rendering the case "exceptional," as that term is used in 35 U.S.C. § 285.

94.     Unless Defendants are enjoined by the Court, Purdue will be substantially and irreparably harmed by Defendants' infringement of the '056 patent.  Purdue has no adequate remedy at law.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs pray for judgment as follows:

A.     Adjudging that Defendants have infringed one or more claims of the patents-in-suit, and that the commercial sale, offer for sale, use, importation, and/or manufacture of Defendants' ANDA Products would infringe, induce infringement of, and/or contribute to the infringement of one or more claims of the patents-in-suit;

B.     Adjudging, pursuant to 35 U.S.C. § 271(e)(4)(A), the effective date of any approval of ANDA No. 213564 and Defendants' ANDA Products, under § 505(j) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)), to be a date not earlier than the last date of expiration of the patents-in-suit, plus any additional periods of extension or exclusivity attached thereto;

C.     Preliminarily and permanently enjoining, pursuant to 35 U.S.C. §§ 271(e)(4)(B) and 283 and Fed. R. Civ. P. 65, Defendants, their officers, partners, agents, servants, employees, parents, subsidiaries, divisions, affiliate corporations, other related business entities, and all other persons acting in concert, participation, or in privity with them, and their successors and assigns, from any commercial manufacture, use, offer to sell, or sale within the United States, or importation into the United States, of any drug

- 20 -

product that is the subject of ANDA No. 213564, including Defendants' ANDA Products or any other drug product that infringes the patents-in-suit;

D.      Declaring this an exceptional case and awarding Plaintiffs their attorneys' fees and costs, as provided by 35 U.S.C. §§ 271(e)(4) and 285; and

E.      Awarding Plaintiffs such other and further relief as this Court may deem just and proper.

This 21st day of May 2024.

|  | *Madison B. Waller* |
|---|---|
| OF COUNSEL: | John F. Morrow, Jr. |
|  | N.C. State Bar No. 23382 |
| John J. Normile (PHV to be submitted) | WOMBLE BOND DICKINSON (US) LLP |
| Gasper J. LaRosa (PHV to be submitted) | One West Fourth Street |
| Kevin V. McCarthy (PHV to be submitted) | Winston-Salem, North Carolina 27101 |
| JONES DAY | Telephone: 336.721.3584 |
| 250 Vesey Street | Facsimile: 336.733-8429 |
| New York, NY 10281-1047 | Email: John.Morrow@wbd-us.com |
| (212) 326-3777 |  |
|  | Madison B. Waller |
| Pablo D. Hendler (PHV to be submitted) | N.C. State Bar No. 51049 |
| Potomac Law Group | WOMBLE BOND DICKINSON (US) LLP |
| 1177 Avenue of the Americas, 5th Floor | 555 Fayetteville Street, Suite 1100 |
| New York NY 10036 | Raleigh, NC  27601 |
| (914) 893-6883 | Telephone: (919) 755-8148 |
|  | Facsimile: (919) 755-6748 |
| *Attorneys for Plaintiffs* | Email: Madison.Waller@wbd-us.com |
|  | *Attorneys for Plaintiffs* |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing Complaint with the

Clerk of Court using the CM/ECF system and upon Defendants by U.S. Mail as follows:

Accord Healthcare Inc.
c/o Emily M. King, Registered Agent
8041 Arco Corporate Drive, Suite 200
 Raleigh, NC 27617

Accord Healthcare Inc. USA
c/o Emily M. King, Registered Agent
8041 Arco Corporate Drive, Suite 200
 Raleigh, NC 27617

This the 21st day of May, 2024.

**WOMBLE BOND DICKINSON (US) LLP**
/s/ *Madison B. Waller*
Madison B. Waller, NC State Bar No. 51049
555 Fayetteville Street, Suite 1100
Raleigh, NC 27602
Phone: (919) 755-8148
Fax: (919) 755-6748
Madison.Waller@wbd-us.com

- 22 -