IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| PURDUE PHARMA L.P., and<br>PURDUE PHARMACEUTICALS L.P.,<br><br>Plaintiffs,<br>v.<br><br>ACCORD HEALTHCARE INC.,<br><br>Defendant. | ) | Case No. 5:24-cv-00284-FL |

## FIRST AMENDED COMPLAINT

Plaintiffs Purdue Pharma L.P. and Purdue Pharmaceuticals L.P. (collectively, "Purdue" or "Plaintiffs"), for their First Amended Complaint against Defendant Accord Healthcare Inc. ("Accord" or "Defendant"), allege as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, for infringement of United States Patent Nos. 11,826,472 ("the '472 patent"), 11,904,055 ("the '055 patent"), 11,938,225 ("the '225 patent"), 11,964,056 ("the '056 patent"); and 12,246,094 ("the '094 patent") (collectively, "the patents-in-suit"), attached as Exhibits A-E.

2. This action relates to Abbreviated New Drug Application ("ANDA") No. 213564 submitted upon information and belief in the name of Defendant to the United States Food and Drug Administration ("FDA").

3. Plaintiffs seek judgment that Defendant has infringed the patents-in-suit. Defendant has infringed the patents-in-suit at least under 35 U.S.C. § 271(e)(2)(A) by filing ANDA No. 213564, submitted upon information and belief in the name of Defendant to the FDA.

4. Purdue's OxyContin® is the subject of approved New Drug Application ("NDA") No. 022272.

5. Defendant's ANDA seeks approval to market a generic version of OxyContin® in the 10 mg, 15 mg, 20 mg, 30 mg, 40 mg, 60 mg and 80 mg dosage strengths ("Defendant's ANDA Products") prior to expiration of the patents-in-suit.

6. On October 8, 2020, Plaintiffs filed a related Complaint against Defendant, C.A. No. 20-01362-RGA (D. Del.) ("*Purdue v. Accord I*"), for infringement of United States Patent Nos. 9,763,933 ("the Mannion '933 patent"); 9,775,808 ("the '808 patent"); 9,763,886 ("the '886 patent"); 9,073,933 ("the '933 patent"); 9,522,919 ("the '919 patent"); and 10,407,434 ("the '434 patent).

7. *Purdue v. Accord I* was filed in connection with Defendant's ANDA, which contained a "Paragraph IV" certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) alleging that the Mannion '933, '808, '933, '919 and '434 patents, listed in the FDA's Orange Book as covering OxyContin®, which is the subject of approved NDA No. 022272, are "invalid, unenforceable, and/or will not be infringed" by the commercial manufacture, use or sale of the drug products described in Defendant's ANDA. The '886 patent is not an Orange Book-listed patent.

8. On April 11, 2023, Judge Richard G. Andrews found claim 3 of the Mannion '933 patent, claim 3 of the '808 patent, claim 6 of the '886 patent, claims 3 and

11 of the ’933 patent, and claim 21 of the ’919 patent invalid for obviousness under 35 U.S.C. § 103.

9. Purdue appealed Judge Andrews’ decision in *Purdue v. Accord I* to the U.S. Court of Appeals for the Federal Circuit (“Federal Circuit”). *See Purdue Pharma L.P. v. Accord Healthcare, Inc.*, No. 23-1953 (Fed. Cir.). On December 30, 2024, the Federal Circuit affirmed Judge Andrews’ decision. Purdue’s deadline to file a petition for writ of *certiorari* is currently April 30, 2025.

10. On July 8, 2022, Plaintiffs filed a related Complaint against Defendant, C.A. No. 22-00913-WCB (D. Del.) (“*Purdue v. Accord II*”), for infringement of United States Patent Nos. 11,304,908 (“the ’908 patent”) and 11,304,909 (“the ’909 patent”).

11. *Purdue v. Accord II* was filed in connection with Defendant’s ANDA, which contained a “Paragraph IV” certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) alleging that the ’908 and ’909 patents, listed in the FDA’s Orange Book as covering OxyContin®, which is the subject of approved NDA No. 022272, are “invalid, unenforceable, and/or will not be infringed” by the commercial manufacture, use or sale of the drug products described in Defendant’s ANDA.

12. *Purdue v. Accord II* was originally assigned to Judge Andrews. On December 31, 2023, Judge Andrews took senior status and the case was reassigned to Judge William C. Bryson of the United States Court of Appeals for the Federal Circuit, who was sitting by designation. Judge Bryson held a two-day bench trial in February 2024. On September 9, 2024, Judge Bryson found claims 1, 10, 18, 23, 28, and 29 of the ’908 patent invalid for obviousness under 35 U.S.C. § 103.

13. Purdue appealed Judge Bryson's decision in *Purdue v. Accord II* to the Federal Circuit. *See Purdue Pharma L.P. v. Accord Healthcare, Inc.*, No. 25-1060 (Fed. Cir.). Briefing is ongoing, and Purdue's reply brief is currently due May 14, 2025.

## THE PARTIES

14. Plaintiff Purdue Pharma L.P. ("Purdue Pharma") is a limited partnership organized and existing under the laws of the State of Delaware, having a place of business at One Stamford Forum, 201 Tresser Boulevard, Stamford, Connecticut 06901. Purdue Pharma is also the holder of approved NDA No. 022272 for OxyContin®, indicated for pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate. Purdue Pharma sells OxyContin® in the United States.

15. Plaintiff Purdue Pharmaceuticals L.P. ("Purdue Pharmaceuticals") is a limited partnership organized and existing under the laws of the State of Delaware, having a place of business at 4701 International Boulevard W., Wilson, North Carolina 27893.

16. Plaintiffs own the patents-in-suit, identified in paragraphs 31-34 below and attached hereto as Exhibits A-D.

17. On information and belief, Defendant Accord Healthcare Inc. ("Accord Healthcare") is a company organized and existing under the laws of the State of North Carolina, having a principal place of business at 8041 Arco Corporate Drive, Suite 200, Raleigh, North Carolina 27617.

18. On information and belief, Defendant is a wholly owned subsidiary of Intas Pharmaceuticals Limited.

19. On information and belief, Defendant develops, manufactures, distributes and/or markets pharmaceutical products throughout the United States, including in this judicial district, through its own actions and through the actions of its agents.

**SUBJECT MATTER JURISDICTION AND VENUE**

20. This action arises under the patent laws of the United States, including 35 U.S.C. § 271 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

21. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

22. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)-(d) and 1400(b).

23. Venue is proper as to Defendant because it is incorporated in the State of North Carolina.

24. Venue is proper as to Defendant, because, on information and belief, Defendant has filed amendments to Defendant's ANDA from its place of business at 8041 Arco Corporate Drive, Suite 200, Raleigh, NC 27617. Thus, Defendant has committed an act of infringement in, and also has a primary place of business in, the Eastern District of North Carolina.

**PERSONAL JURISDICTION**

25. Personal jurisdiction is proper as to Defendant because it is incorporated in the State of North Carolina.

26. This Court also has personal jurisdiction over Defendant by virtue of, *inter alia,* its systematic and continuous contacts with North Carolina and contacts with North Carolina in connection with the submission of Defendant's ANDA, as set forth below.

27. On information and belief, Defendant is in the business of preparing generic pharmaceuticals that it distributes in the State of North Carolina and throughout the United States.

28. On information and belief, if ANDA No. 213564 is approved, then Defendant's ANDA Products would, among other things, be marketed and distributed in North Carolina, and/or prescribed by physicians practicing and dispensed by pharmacies located within North Carolina, all of which would have a substantial effect on the State of North Carolina.

29. This Court further has personal jurisdiction over Defendant because it has purposely availed itself of the benefits of North Carolina's laws such that it should reasonably anticipate being haled into court here.

30. It is not fundamentally unfair or unreasonable for Defendant to litigate this action in this District.

## **THE PATENTS-IN-SUIT**

31. Purdue is the lawful owner of all right, title and interest in the ’472 patent, titled "TAMPER RESISTANT DOSAGE FORMS," including the right to sue and to recover for past infringement thereof. A copy of the ’472 patent is attached hereto as Exhibit A, which was duly and legally issued on November 28, 2023, naming William H. McKenna, Richard O. Mannion, Edward P. O'Donnell, and Haiyong H. Huang as the inventors.

32. Purdue is the lawful owner of all right, title and interest in the ’055 patent, titled "TAMPER RESISTANT DOSAGE FORMS," including the right to sue and to recover for past infringement thereof. A copy of the ’055 patent is attached hereto as Exhibit B, which was duly and legally issued on February 20, 2024, naming William H.

McKenna, Richard O. Mannion, Edward P. O'Donnell, and Haiyong H. Huang as the inventors.

33. Purdue is the lawful owner of all right, title and interest in the '225 patent, titled "TAMPER RESISTANT DOSAGE FORMS," including the right to sue and to recover for past infringement thereof. A copy of the '225 patent is attached hereto as Exhibit C, which was duly and legally issued on March 26, 2024, naming William H. McKenna, Richard O. Mannion, Edward P. O'Donnell, and Haiyong H. Huang as the inventors.

34. Purdue is the lawful owner of all right, title and interest in the '056 patent, titled "TAMPER RESISTANT DOSAGE FORMS," including the right to sue and to recover for past infringement thereof. A copy of the '056 patent is attached hereto as Exhibit D, which was duly and legally issued on April 23, 2024, naming William H. McKenna, Richard O. Mannion, Edward P. O'Donnell, and Haiyong H. Huang as the inventors.

35. Purdue is the lawful owner of all right, title and interest in the '094 patent, titled "TAMPER RESISTANT DOSAGE FORMS," including the right to sue and to recover for past infringement thereof. A copy of the '094 patent is attached hereto as Exhibit E, which was duly and legally issued on March 11, 2025, naming William H. McKenna, Richard O. Mannion, Edward P. O'Donnell, and Haiyong H. Huang as the inventors.

## DEFENDANT'S ANDA

36. On information and belief, on or before August 25, 2020, Defendant filed Defendant's ANDA in the name of Defendant with the FDA, under § 505(j) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 355(j)), seeking approval to engage in the

commercial manufacture, use, sale, offer for sale, or importation of Defendant's ANDA Products generic products based on the Reference Listed Drug OxyContin®, which is the subject of approved NDA No. 022272.

37. In a letter dated August 25, 2020, addressed to Plaintiffs and received by Purdue Pharma on or about August 26, 2020, Defendant provided what purports to be a "Notice of Paragraph IV Certification" with respect to Defendant's ANDA and Defendant's ANDA Products, under § 505(j)(2)(B)(iv) of the Federal Food, Drug, and Cosmetic Act.

38. In a second letter dated May 26, 2022, addressed to Plaintiffs and received by Purdue Pharma on or about May 27, 2022, Defendant provided what purports to be a "Notice of Paragraph IV Certification" with respect to Defendant's ANDA and Defendant's ANDA Products, under § 505(j)(2)(B)(iv) of the Federal Food, Drug, and Cosmetic Act.

39. In a third letter dated August 28, 2024, addressed to Plaintiffs and received by Purdue Pharma on or about August 29, 2024, Defendant provided what purports to be a "Notice of Paragraph IV Certification" with respect to Defendant's ANDA and Defendant's ANDA Products, under § 505(j)(2)(B)(iv) of the Federal Food, Drug, and Cosmetic Act.

40. In a fourth letter dated March 25, 2025, addressed to Plaintiffs and received by Purdue Pharma on or about March 26, 2025, Defendant provided what purports to be a "Notice of Paragraph IV Certification" with respect to Defendant's ANDA and Defendant's ANDA Products, under § 505(j)(2)(B)(iv) of the Federal Food, Drug, and Cosmetic Act.

41. Defendant's submission of Defendant's ANDA is an act of infringement of the patents-in-suit under the United States Patent Law, 35 U.S.C. § 271(e)(2)(A).

42. Defendant's amendments to Defendant's ANDA are also acts that infringe the patents-in-suit.

43. Following USPTO issuance of the patents-in-suit, Plaintiffs commenced this action without unreasonable delay.

## FIRST CLAIM FOR RELIEF
## (PATENT INFRINGEMENT OF U.S. PATENT NO. 11,826,472)

44. Purdue incorporates by reference and reallege paragraphs 1 through 43 above as though fully restated herein.

45. Pursuant to 35 U.S.C. § 271(e)(2), Defendant's submission of ANDA No. 213564 to the FDA seeking approval of Defendant's ANDA Products, including any amendments thereto was an act of infringement of the '472 patent by Defendant.

46. On information and belief, Defendant's ANDA Products, or the use or manufacture thereof, are covered by independent claim 1 of the '472 patent and certain claims dependent therefrom. Independent claim 1 recites:

> A solid oral extended release dosage form, comprising:
>
> an extended release matrix comprising an active agent and polyethylene oxide (PEO) having an approximate molecular weight of 2 million Da to 8 million Da based on rheological measurements, wherein the PEO comprises at least about 30% (by weight) of the total weight of the dosage form,
>
> wherein the dosage form provides a dissolution rate, which when measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF) at 37° C., is between 12.5 and 55% (by wt) active agent released after 1 hour, between 25 and 65% (by wt) active agent released after 2 hours, between 45 and 85% (by wt) active agent released after 4 hours and between 55 and 95% (by wt) active agent released after 6 hours,
>
> wherein the dosage form provides an in-vitro dissolution rate, when measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated

gastric fluid without enzymes (SGF) comprising 40% ethanol at 37° C., characterized by the percent amount of active released at 0.5 hours, that deviates no more than about 20% points 0.5 hours from the corresponding in-vitro dissolution rate measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF) at 37° C. without ethanol,

wherein the dosage form is cured at a curing temperature ranging from about 68° C. to about 85° C.,

wherein the curing time is from about 30 minutes to about 4 hours, wherein the dosage form is a tablet,

wherein the dosage form when subjected to a maximum force of about 196 N or about 439 N in a tablet hardness test, does not break,

wherein the tablet when subjected to an indentation test resists a work of at least about 0.06 J without cracking,

wherein the active agent is an opioid analgesic,

wherein the opioid analgesic is oxycodone hydrochloride,

wherein the dosage form provides a mean $t_{max}$ of oxycodone at about 2 to about 6 hours,

wherein the dosage form comprises from about 10 mg to about 160 mg oxycodone hydrochloride and wherein the dosage form provides a mean maximum plasma concentration ($C_{max}$) of oxycodone from about 6 ng/mL to about 240 ng/mL,

wherein the oxycodone hydrochloride has a 14-hydroxycodeinone level of less than about 25 ppm,

wherein the extended release matrix further comprises a PEO having an approximate molecular weight of 100, 000 Da to 900,000 Da based on rheological measurements.

47. If approved by the FDA, Defendant's commercial manufacture, use, sale, and/or offer for sale of Defendant's ANDA Products will infringe, induce infringement of, and/or contribute to the infringement of one or more claims of the '472 patent under 35 U.S.C. § 271(a)-(c). Since at least the issue date of the '472 patent, Defendant has acted with knowledge, or at least with willful blindness of the fact, that the induced acts would constitute infringement of the '472 patent.

48. Defendant's ANDA Products constitute a material part of the inventions

covered by the claims of the ’472 patent.

49. Upon information and belief, Defendant knows that Defendant’s ANDA Products are especially made or especially adapted for use in the infringement of one or more claims of the ’472 patent.

50. Upon information and belief, Defendant has had and continues to have knowledge that there is no substantial non-infringing use for Defendant’s ANDA Products.

51. Defendant has been aware of the existence of the ’472 patent and has no reasonable basis for believing that Defendant’s ANDA Products will not infringe the ’472 patent, thus rendering the case “exceptional,” as that term is used in 35 U.S.C. § 285.

52. Unless Defendant is enjoined by the Court, Purdue will be substantially and irreparably harmed by Defendant’s infringement of the ’472 patent. Purdue has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### (PATENT INFRINGEMENT OF U.S. PATENT NO. 11,904,055)

53. Purdue incorporates by reference and reallege paragraphs 1 through 43 above as though fully restated herein.

54. Pursuant to 35 U.S.C. § 271(e)(2), Defendant’s submission of ANDA No. 213564 to the FDA seeking approval of Defendant’s ANDA Products, including any amendments thereto, was an act of infringement of the ’055 patent by Defendant.

55. On information and belief, the process for making Defendant’s ANDA Products, is covered by the independent claim of the ’055 patent and certain dependent claims therefrom. Independent claim 1 recites:

> A process of preparing a solid oral extended release pharmaceutical dosage form, comprising:
>
> combining: (1) polyethylene oxide, and (2) oxycodone hydrochloride, to

form a composition;

shaping the composition to form an extended release matrix formulation; and

curing said extended release matrix formulation at a temperature ranging from about 68° C. to about 85° C. for about 30 minutes to about 4 hours, to form the dosage form,

wherein the extended release matrix comprises:

from about 10 mg to about 160 mg oxycodone hydro- chloride;

a polyethylene oxide (PEO) having an approximate molecular weight of 2 million Da to 8 million Da based on rheological measurements; and

a PEO having an approximate molecular weight of 100,000 Da to 900,000 Da based on rheological measurements,

wherein the PEO comprises at least about 30% (by weight) of the total weight of the dosage form,

wherein the dosage form provides a dissolution rate, which when measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF) at 37° C., is between 12.5 and 55% (by wt) active agent released after 1 hour, between 25 and 65% (by wt) active agent released after 2 hours, between 45 and 85% (by wt) active agent released after 4 hours and between 55 and 95% (by wt) active agent released after 6 hours,

wherein the dosage form provides an in-vitro dissolution rate, when measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF)comprising 40% ethanol at 37° C., characterized by the percent amount of active released at 0.5 hours, that deviates no more than about 20% points 0.5 hours from the corresponding in-vitro dissolution rate measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF) at 37° C. without ethanol,

wherein the dosage form is a tablet,

wherein the dosage form when subjected to a maximum force of about 196 N or about 439 N in a tablet hardness test, does not break,

wherein the tablet when subjected to an indentation test resists a work of at least about 0.06J without cracking,

wherein the dosage form provides a mean $t_{max}$ of oxycodone at about 2 to about 6 hours,

wherein the administration of the dosage form provides a mean maximum plasma concentration ($C_{max}$) of oxycodone from about 6 ng/mL to about 240 ng/mL, and

wherein the oxycodone hydrochloride has a 14-hydroxy-codeinone level of

less than about 25 ppm.

56. If approved by the FDA, Defendant's importation, offer for sale, sale, and/or use of Defendant's ANDA Products will infringe, induce infringement of, and/or contribute to the infringement of one or more claims of the '055 patent under 35 U.S.C. § 271(a)-(c), and/or (g). Since at least the issue date of the '055 patent, Defendant has acted with knowledge, or at least with willful blindness of the fact, that the induced acts would constitute infringement of the '055 patent.

57. Defendant, through at least its labeling and manufacturing process, will intentionally induce infringement of the '055 patent by at least patients who will take Defendant's NDA Products, caregivers/healthcare providers who administer the products, and any manufacturers other than Defendant who manufacture Defendant's NDA Products.

58. Defendant's ANDA Products constitute a material part of the inventions covered by the claims of the '055 patent.

59. Upon information and belief, Defendant knows that Defendant's ANDA Products are especially made or especially adapted for use in the infringement of one or more claims of the '472 patent.

60. Upon information and belief, Defendant has had and continues to have knowledge that there is no substantial non-infringing use for Defendant's ANDA Products.

61. Upon information and belief, Defendant has been aware of the existence of the '055 patent and has no reasonable basis for believing that Defendant's ANDA Products will not infringe the '055 patent, thus rendering the case "exceptional," as that term is used in 35 U.S.C. § 285.

62. Unless Defendant is enjoined by the Court, Purdue will be substantially and irreparably harmed by Defendant's infringement of the '055 patent. Purdue has no

adequate remedy at law.

## THIRD CLAIM FOR RELIEF

**(PATENT INFRINGEMENT OF U.S. PATENT NO. 11,938,225)**

63. Purdue incorporates by reference and reallege paragraphs 1 through 43 above as though fully restated herein.

64. Pursuant to 35 U.S.C. § 271(e)(2), Defendant's submission of ANDA No. 213564 to the FDA seeking approval of Defendant's ANDA Products, including any amendments thereto, was an act of infringement of the '225 patent by Defendant.

65. On information and belief, Defendant's ANDA Products, or the use thereof, are covered by the independent claim of the '225 patent and certain dependent claims therefrom. Independent claim 1 recites:

> A method of treating pain comprising orally administering to a patient in need thereof a solid oral extended release dosage form comprising:
>
> an extended release matrix comprising from about 10 mg to about 160 mg oxycodone hydrochloride;
>
> a polyethylene oxide (PEO) having an approximate molecular weight of 2 million Da to 8 million Da based on rheological measurements; and
>
> a PEO having an approximate molecular weight of 100,000 Da to 900,000 Da based on rheological measurements,
>
> wherein the PEO comprises at least about 30% (by weight) of the total weight of the dosage form,
>
> wherein the dosage form provides a dissolution rate, which when measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF) at 37° C, is between 12.5 and 55% (by wt) active agent released after 1 hour, between 25 and 65% (by wt) active agent released after 2 hours, between 45 and 85% (by wt) active agent released after 4 hours and between 55 and 95% (by wt) active agent released after 6 hours,
>
> wherein the dosage form provides an in-vitro dissolution rate, when measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF) comprising 40% ethanol at 37° C, characterized by the percent amount of active released at 0.5 hours, that deviates no more than about 20% points 0.5 hours from the corresponding in-vitro dissolution rate measured in a USP Apparatus 1 (basket) at 100 rpm

in 900 ml simulated gastric fluid without enzymes (SGF) at 37° C without ethanol,

wherein the dosage form is cured at a curing temperature ranging from about 68° C to about 85° C,

wherein the curing time is from about 30 minutes to about 4 hours,

wherein the dosage form is a tablet,

wherein the dosage form when subjected to a maximum force of about 196 N or about 439 N in a tablet hardness test, does not break,

wherein the tablet when subjected to an indentation test resists a work of at least about 0.06 J without cracking,

wherein the dosage form provides a mean $t_{max}$ of oxycodone at about 2 to about 6 hours,

wherein the administration of the dosage form provides a mean maximum plasma concentration ($C_{max}$) of oxycodone from about 6 ng/mL to about 240 ng/mL, and

wherein the oxycodone hydrochloride has a 14-hydroxycodeinone level of less than about 25 ppm.

66. The administration of Defendant's ANDA Products by any healthcare providers, including, but not limited to doctors, physicians, and nurse practitioners ("Healthcare Providers"), and patients, will directly infringe one or more claims of the '255 patent.

67. Defendant's proposed label for Defendant's ANDA Products will explicitly instruct Healthcare Providers and patients to use Defendant's ANDA Products in a manner that will directly infringe one or more claims of the '225 patent.

68. Defendant, through at least its labeling and manufacturing process, will intentionally induce infringement of the '225 patent by at least patients who will take Defendant's NDA Products, caregivers/healthcare providers who administer the products, and any manufacturers other than Defendant who manufacture Defendant's NDA Products.

69. If approved by the FDA, Defendant's importation, offer for sale, sale, and/or use of Defendant's ANDA Products will infringe, induce infringement of, and/or contribute

to the infringement of one or more claims of the ’225 patent under 35 U.S.C. § 271(a)-(c), and/or (g).

70. Since at least the issue date of the ’225 patent, Defendant has acted with knowledge, or at least with willful blindness of the fact, that the induced acts would constitute infringement of the ’225 patent.

71. Defendant’s ANDA Products constitute a material part of the inventions covered by the claims of the ’225 patent.

72. Upon information and belief, Defendant knows that Defendant’s ANDA Products are especially made or especially adapted for use in the infringement of one or more claims of the ’225 patent.

73. Upon information and belief, Defendant has had and continues to have knowledge that there is no substantial non-infringing use for Defendant’s ANDA Products.

74. The administration of Defendant’s ANDA Products by any Healthcare Providers and patients, for the treatment of pain, will directly infringe one or more claims of the ’225 patent, including but not limited to independent claim 1 recited above.

75. Defendant’s proposed label for Defendant’s ANDA Products will explicitly instruct Healthcare Providers and patients to use Defendant’s ANDA Products in a manner that will directly infringe one or more claims of the ’225 patent.

76. If Defendant’s ANDA Products are approved by the FDA, Defendant will actively induce others. including, e.g., Healthcare Providers and patients, to directly infringe one or more claims of the ’225 patent. Since at least the date of the Notice Letter, Defendant has acted with knowledge, or at least with willful blindness, that the induced acts would constitute infringement of the ’225 patent.

77. Defendant intends to cause direct infringement by others, *e.g.*, Healthcare Providers and patients.

78. If Defendant's ANDA Products are approved by the FDA, Defendant will take affirmative steps to induce infringement by, among other things, instructing Healthcare Providers and patients, through Defendant's proposed label, to use Defendant's ANDA Products in a manner that directly infringes one or more claims of the '225 patent. Thus, Defendant will aid, abet, urge, or encourage others, including, *e.g.*, Healthcare Providers and patients, to directly infringe one or more claims of the '225 patent, and Defendant will affirmatively and specifically intend to cause direct infringement.

79. Upon information and belief, Defendant has been aware of the existence of the '225 patent and has no reasonable basis for believing that Defendant's ANDA Products will not infringe the '225 patent, thus rendering the case "exceptional," as that term is used in 35 U.S.C. § 285.

80. Unless Defendant is enjoined by the Court, Purdue will be substantially and irreparably harmed by Defendant's infringement of the '225 patent. Purdue has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF
**(PATENT INFRINGEMENT OF U.S. PATENT NO. 11,964,056)**

81. Purdue incorporates by reference and reallege paragraphs 1 through 43 above as though fully restated herein.

82. Pursuant to 35 U.S.C. § 271(e)(2), Defendant's submission of ANDA No. 213564 to the FDA seeking approval of Defendant's ANDA Products, including amendments thereto, was an act of infringement of the '056 patent by Defendant.

83. On information and belief, Defendant's ANDA Products, or the use or

manufacture thereof, are covered by independent claim 1 of the ’056 patent and certain dependent claims therefrom. Independent claim 1 recites:

> A solid oral extended release dosage form, comprising:
>
> an extended release matrix comprising an active agent, magnesium stearate, butylated hydroxytoluene and polyethylene oxide (PEO) having an approximate molecular weight of 1 million Dato 15 million Da based on rheological measurements,
>
> wherein the PEO comprises at least about 30% (by weight) of the total weight of the dosage form, a film coat overcoated on the extended release matrix,
>
> wherein the dosage form provides a dissolution rate, which when measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF) at 37° C, is between 12.5 and 55% (by wt) active agent released after 1 hour, between 25 and 65% (by wt) active agent released after 2 hours, between 45 and 85% (by wt) active agent released after 4 hours and between 55 and 95% (by wt) active agent released after 6 hours, and
>
> wherein the dosage form is expanded upon curing, as measured by a decrease in density of at least about 1.0% as determined by Archimedes Principle using a liquid of known density (po).

84. On information and belief, Defendant’s ANDA Products, or the use or manufacture thereof, are covered by independent claim 19 of the ’056 patent. Independent Claim 19 recites

> A solid oral extended release dosage form comprising: (i) an extended release matrix comprising from about 10 mg to about 160 mg oxycodone hydrochloride, magnesium stearate, butylated hydroxytoluene and polyethylene oxide (PEO) having an approximate molecular weight of 1 million Dato 15 million Da based on rheological measurements,
>
> wherein the PEO comprises at least about 30% (by weight) of the total weight of the dosage form and (ii) a film coat overcoated on the extended release matrix; wherein the dosage form provides a mean maximum plasma concentration ($C_{max}$) of oxycodone from about 6 ng/mL to about 240 ng/mL and
>
> wherein the dosage form is expanded upon curing, as measured by a decrease in density of at least about 1.0% as determined by Archimedes Principle using a liquid of known density (po).

85. On information and belief, Defendant's ANDA Products, or the use or manufacture thereof, are covered by independent claim 20 of the '056 patent. Independent Claim 20 recites:

> A solid oral extended release dosage form comprising: (i) an extended release matrix comprising oxycodone hydrochloride, magnesium stearate, butylated hydroxytoluene and polyethylene oxide (PEO) having an approximate molecular weight of 1 million Dato 15 million Da based on rheological measurements and (ii) a film coat overcoated on the extended release matrix;
>
> wherein the dosage form provides an in-vitro dissolution rate, when measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF) comprising 40% ethanol at 37° C, characterized by the percent amount of oxycodone hydrochloride released at 0.5 hours, that deviates no more than about 20% points 0.5 hours from the corresponding in-vitro dissolution rate measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF) at 37° C without ethanol and
>
> wherein the dosage form is expanded upon curing, as measured by a decrease in density of at least about 1.0% as determined by Archimedes Principle using a liquid of known density (po).

86. If approved by the FDA, Defendant's commercial manufacture, use, importation, sale, and/or offer for sale of Defendant's ANDA Products will infringe, induce infringement of, and/or contribute to the infringement of one or more claims of the '056 patent under 35 U.S.C. § 271(a)-(c). Since at least the issue date of the '056 patent, Defendant has acted with knowledge, or at least with willful blindness of the fact, that the induced acts would constitute infringement of the '056 patent.

87. Upon information and belief, Defendant knows that Defendant's ANDA Products are especially made or especially adapted for use in the infringement of one or more claims of the '056 patent.

88. Upon information and belief, Defendant has had and continues to have knowledge that there is no substantial non-infringing use for Defendant's ANDA Products.

89. Defendant's ANDA Products constitute a material part of the inventions covered by the claims of the '056 patent.

90. Upon information and belief, Defendant has been aware of the existence of the '056 patent and has no reasonable basis for believing that Defendant's ANDA Products will not infringe the '056 patent, thus rendering the case "exceptional," as that term is used in 35 U.S.C. § 285.

91. Unless Defendant is enjoined by the Court, Purdue will be substantially and irreparably harmed by Defendant's infringement of the '056 patent. Purdue has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
## (PATENT INFRINGEMENT OF U.S. PATENT NO. 12,246,094)

92. Purdue incorporates by reference and reallege paragraphs 1 through 43 above as though fully restated herein.

93. Pursuant to 35 U.S.C. § 271(e)(2), Defendant's submission of ANDA No. 213564 to the FDA seeking approval of Defendant's ANDA Products, including any amendments thereto was an act of infringement of the '094 patent by Defendant.

94. On information and belief, Defendant's ANDA Products, or the use or manufacture thereof, are covered by independent claims 17-19 of the '094 patent. Independent claims 17-19 recite:

> 17. A solid oral extended release dosage form comprising: an extended release matrix comprising from about 10 mg to about 160 mg oxycodone hydrochloride, magnesium stearate and polyethylene oxide (PEO) having an approximate molecular weight of 2 million Da to 15 million Da based on rheological measurements, wherein the PEO comprises at least about 30% (by weight) of the total weight of the dosage form; wherein the dosage form provides a mean maximum plasma concentration (Cmax) of oxycodone from about 6 ng/ml to about 240 ng/ml and wherein the density of the extended release matrix is equal to or less than about 1.20 g/cm3 as determined by Archimedes Principle using a liquid of known density (ρ0);

wherein the extended release matrix is shaped to form a tablet and convection heated in a coating pan for a time period of at least about 5 minutes at a temperature of at least about 60° C. and thereafter cooled.

18. A solid oral extended release dosage form comprising: an extended release matrix comprising oxycodone hydrochloride, magnesium stearate and polyethylene oxide (PEO) having an approximate molecular weight of 2 million Da to 15 million Da based on rheological measurements; wherein the dosage form provides an in-vitro dissolution rate, when measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF) comprising 40% ethanol at 37° C., characterized by the percent amount of oxycodone hydrochloride released at 0.5 hours, that deviates no more than about 20% points 0.5 hours from the corresponding in-vitro dissolution rate measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF) at 37° C. without ethanol and wherein the density of the extended release matrix is equal to or less than about 1.20 g/cm3 as determined by Archimedes Principle using a liquid of known density (ρ0); wherein the extended release matrix is shaped to form a tablet and convection heated in a coating pan for a time period of at least about 5 minutes at a temperature of at least about 60° C. and thereafter cooled.

19. A solid oral extended release dosage form, comprising: a shaped extended release matrix comprising oxycodone hydrochloride, magnesium stearate and polyethylene oxide (PEO) having an approximate molecular weight of 2 million Da to 15 million Da based on rheological measurements, wherein the PEO comprises at least about 30% (by weight) of the total weight of the dosage form, wherein the extended release matrix is shaped to form a tablet and convection heated in a coating pan for a time period of at least about 5 minutes at a temperature of at least about 60° C. and thereafter cooled, wherein the dosage form provides a dissolution rate, which when measured in a USP Apparatus 1 (basket) at 100 rpm in 900 ml simulated gastric fluid without enzymes (SGF) at 37° C., is between 12.5 and 55% (by wt) oxycodone hydrochloride released after 1 hour, between 25 and 65% (by wt) oxycodone hydrochloride released after 2 hours, between 45 and 85% (by wt) oxycodone hydrochloride released after 4 hours and between 55 and 95% (by wt) oxycodone hydrochloride released after 6 hours, and wherein the density of the extended release matrix is equal to or less than about 1.20 g/cm3 as determined by Archimedes Principle using a liquid of known density (ρ0).

95. If approved by the FDA, Defendant's commercial manufacture, use, sale, and/or offer for sale of Defendant's ANDA Products will infringe, induce infringement of, and/or contribute to the infringement of one or more claims of the '094 patent under 35 U.S.C. § 271(a)-(c). Since at least the issue date of the '094 patent, Defendant has acted

with knowledge, or at least with willful blindness of the fact, that the induced acts would constitute infringement of the ’094 patent.

96. Defendant’s ANDA Products constitute a material part of the inventions covered by the claims of the ’094 patent.

97. Upon information and belief, Defendant knows that Defendant’s ANDA Products are especially made or especially adapted for use in the infringement of one or more claims of the ’094 patent.

98. Upon information and belief, Defendant has had and continues to have knowledge that there is no substantial non-infringing use for Defendant’s ANDA Products.

99. Defendant has been aware of the existence of the ’094 patent and has no reasonable basis for believing that Defendant’s ANDA Products will not infringe the ’094 patent, thus rendering the case “exceptional,” as that term is used in 35 U.S.C. § 285.

100. Unless Defendant is enjoined by the Court, Purdue will be substantially and irreparably harmed by Defendant’s infringement of the ’094 patent. Purdue has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A. Adjudging that Defendant has infringed one or more claims of the patents-in-suit, and that the commercial sale, offer for sale, use, importation, and/or manufacture of Defendant’s ANDA Products would infringe, induce infringement of, and/or contribute to the infringement of one or more claims of the patents-in-suit;

B. Adjudging, pursuant to 35 U.S.C. § 271(e)(4)(A), the effective date of any approval of ANDA No. 213564 and Defendant’s ANDA Products, under § 505(j) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)), to be a date not earlier than the

last date of expiration of the patents-in-suit, plus any additional periods of extension or exclusivity attached thereto;

C. Preliminarily and permanently enjoining, pursuant to 35 U.S.C. §§ 271(e)(4)(B) and 283 and Fed. R. Civ. P. 65, Defendant, its officers, partners, agents, servants, employees, parents, subsidiaries, divisions, affiliate corporations, other related business entities, and all other persons acting in concert, participation, or in privity with it, and its successors and assigns, from any commercial manufacture, use, offer to sell, or sale within the United States, or importation into the United States, of any drug product that is the subject of ANDA No. 213564, including Defendant's ANDA Products or any other drug product that infringes the patents-in-suit;

D. Declaring this an exceptional case and awarding Plaintiffs their attorneys' fees and costs, as provided by 35 U.S.C. §§ 271(e)(4) and 285; and

E. Awarding Plaintiffs such other and further relief as this Court may deem just and proper.

This 2nd day of May 2025.

/s/ Zachary N. Bernstein
Zachary N. Bernstein
North Carolina State Bar No. 61681
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Tel: (919) 755-2167
Email: Zachary.bernstein@wbd-us.com

John F. Morrow, Jr.
N.C. State Bar No. 23382
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, North Carolina 27101
Telephone: (336) 721-3584
Facsimile: (336) 733-8429
John.Morrow@wbd-us.com

OF COUNSEL:

John J. Normile
NY State Bar No. 2236693
Gasper J. LaRosa
NY State Bar No. 4049367
Kevin V. McCarthy
NY State Bar No. 5417217
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone: (212) 326-3777
jjnormile@jonesday.com
gjlarosa@jonesday.com
kmccarthy@jonesday.com

Daniel G. Brown
NY Bar No. 2630994
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
daniel.brown@lw.com

Marc N. Zubick
IL Bar No. 6308239
Sarah W. Wang
IL Bar No. 6322872
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
marc.zubick@lw.com
sarah.wang@lw.com

Herman H. Yue
NY BAR NO. 4602645
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
herman.yue@lw.com

*Attorneys for Plaintiffs*
*Purdue Pharma L.P.*
*Purdue Pharmaceuticals L.P.*